IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ROGER C.,<br>  Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>  Defendant. | Case No. 4:20-cv-04179-JEH |

**Order**

Now before the Court is the Plaintiff Roger C.'s Motion for Summary Judgment (Doc. 15) and the Commissioner's Motion for Summary Affirmance (Doc. 19).¹ For the reasons stated herein, the Court DENIES the Plaintiff's Motion for Summary Judgment and GRANTS the Commissioner's Motion for Summary Affirmance.²

**I**

Roger C. filed an application for disability insurance benefits (DIB) on May 23, 2018, alleging disability beginning on March 15, 2018. His DIB application was denied initially on August 3, 2018 and upon reconsideration on December 7, 2018. Roger filed a request for hearing concerning his DIB application which was held on September 4, 2019 before the Honorable Robert V. Luetkenhaus (ALJ). At the hearing, Roger was represented by an attorney, and Roger and a vocational expert (VE) testified. Following the hearing, Roger's claim was denied on October 3, 2019.

---

¹ The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 13, 14).
² References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Docs. 7, 20) on the docket.

His request for review by the Appeals Council was denied on July 6, 2020, making the ALJ's Decision the final decision of the Commissioner. Roger timely filed the instant civil action seeking review of the ALJ's Decision on August 20, 2020.

## II

At the hearing, Roger was 52 years old and lived with his four dogs in a single-family dwelling. He attended some college and received a certificate in massage therapy. He served in the U.S. Marine Corps for four years. He received Veterans Affairs (VA) disability income and had a 70% VA disability rating. He previously worked as an over the road semi-truck driver and briefly as a massage therapist and food truck vendor. Roger had worked nowhere and did not try working anywhere since March 2018. Roger testified he had to stop working after slipping on ice at work in January 2018 which caused him to pull a muscle in his hip, the pain of which kept getting "worse and worse." AR 60.

As for the January 2018 slip at work, Roger testified that the doctor thought his pain was coming from his back but Roger "kind of argu[ed] with [the doctor]" that it was his hip that caused the pain. AR 60. He explained the pain as shooting through his hip and excruciating pain in his leg. He said the back surgery he underwent in October 2018 did not help at all. As of the hearing date, Roger stated he had pain in his lower back, pain down his left leg, and pain in his left hip joint. He said his left hip pain went down through his butt and down the back of his leg, thigh, and shin. He said his pain persisted even though he underwent surgery and took prescription medication.

Roger testified that he drove, though not very far, and his driving was limited to the grocery store, appointments, doctors' appointments, and "stuff like that." AR 48. He said he used to run, bike, and swim but the throbbing pain he experienced made it so that he could no longer even run around the block. He said he mowed his yard because he could not afford to pay someone to do it, but

doing so, even with breaks, caused him pain while mowing and later at night. Roger said he could sit for about a half hour to 45 minutes before he would have to get up, could walk less than a quarter mile at one time, and guessed he could lift and carry 20 to 30 pounds. He did his own grocery shopping and cooking, had a cleaning lady, and did his own laundry though friends or his cleaning lady sometimes did his laundry for him. As a result of his physical problems, Roger testified that he sat around, though he tried to do little things around the house such as the dishes, and he planted flowers in 2019.

Roger further testified that he did not think he still had the leg power or stamina to operate the clutch that was involved in his past work due to the current condition of his back. He said the total time he could be on his feet in a day would be less than three hours. He kept a cane in his truck, but he tried not to walk with it so as not to rely on it. He elaborated on his lifting and carrying abilities, testifying that he could not lift and carry 20 to 30 pounds frequently in a day and could not even lift 10 pounds repeatedly throughout the day.

The ALJ and Roger's attorney then questioned the VE who testified that a hypothetical individual with the same residual functional capacity as Roger would be able to do Roger's past relevant work of "drive no touch loads" but would not "be able to do a lot of his past work." AR 79. The VE also identified additional light jobs that would meet the hypothetical included marker, router, and order caller. The VE testified that Roger did not acquire skills that were transferable to the sedentary range of exertion.

### III

In his Decision, the ALJ determined at Step Two that Roger had the following severe impairments: degenerative changes of the lumbar spine and status-post lumbar discectomy. AR 19. At Step Four, the ALJ made the following residual functional capacity (RFC) finding: "[T]he claimant has the [RFC] to

perform light work as defined in 20 CFR 404.1567(b) except can only occasionally climb ladders, ropes, and scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl." AR 23.

The ALJ listed the "variety" of Roger's reported symptoms including limited movement, constant pain, some tingling with his pain, worse pain at night, and radiating pain.  The ALJ also listed the location of Roger's complained-of pain: Roger's back, hamstring, calf, shin, left hip, left leg, left buttock, left upper thigh, and bottom of his foot. As for Roger's day-to-day activities, the ALJ listed Rogers reports that he lived alone, had no problems taking care of his personal care, could take care of his dogs, would make his own meals but mostly ate carry-out, would take a daily nap, needed help with cooking and cleaning, could drive alone though it was painful to sit while driving, went fishing occasionally, and worked on little activities around the house.  The ALJ also observed that Roger looked fit at the hearing though Roger testified he had not worked out in two years.

The ALJ detailed medical records from 2017 (when Roger complained of low back pain radiating into his groin and left hip) through January 24, 2018 (when Roger told a doctor he had slipped on some ice a week and a half before and tweaked his back) and to July 2019 (when Roger continued to complain of physical limitations and pain in his back and leg).  During that span of time, Roger went to a pain clinic, took prescription medication, received injections, underwent massage therapy, engaged in stretching, went to physical therapy, regularly followed with a chiropractor, started aquatic physical therapy, used medical marijuana, and underwent imaging.  His imaging included a May 2016 MRI of the back which showed multilevel degenerative disc disease, August 2017 x-rays of the lumbar spine which showed disc arthropathy and degenerative narrowing at L5-S1, an October 2017 CT scan of the lumbar spine which showed mild straightening of the lumbar lordosis and severe disc height loss at L2-L3 and L5-

S1, a March 2018 MRI of the left femur which showed no atrophy, a March 2018 MRI of the left hip which showed mild degenerative changes but was otherwise normal, and May 2018 x-rays of the left hip which were normal. The ALJ also discussed the results of May and December 2018 lumbar spine MRIs, a May 2019 EMG and nerve conduction study, and June 2019 x-rays of the hips. Roger underwent a left L4-L5 microdiscectomy in October 2018 and reported he was doing okay two weeks later though his left leg radiculopathy had not completely resolved, told his surgeon the next month he had plateaued with improvement, and two months later continued to report severe pain and discomfort in his back and left hip and leg.

At his July 2018 consultative examination, Roger could get on and off the exam table without assistance, could walk more than 50 fifty without support with a slight limp, could heel/toe walk, had normal range of motion though had pain with motion in his low back and left hip, had normal strength and reflexes, and had negative straight leg raises. The ALJ found "not persuasive" the first State Agency consultant's opinion that Roger did not have any severe physical impairments where "later supplied records . . . showed continued symptoms since [Roger's] lumbar surgery." AR 31. The ALJ found "persuasive" the second State Agency consultant's opinion that as of Roger's discectomy, Roger could do light work with occasional stooping, kneeling, crouching, crawling, and climbing ladders, ropes, or scaffolds, and frequent balancing (the RFC the ALJ ultimately adopted). The ALJ articulated: "This opinion was based on a review of the longitudinal record. It was consistent with the claimant's complaints of pain since his surgery and the claimant's surgeon indicating there was noting [sic] to explain why he was experiencing his current amount of discomfort." *Id*.

The ALJ also considered the Worker's Compensation restrictions another doctor provided and found that doctor's opinion "not persuasive" where

5

restrictions provided were only temporary "as shown by the changing nature of her restrictions." *Id*. The ALJ found "not persuasive" another doctor's opinion for the same reason. AR 32. The ALJ found "not persuasive" Roger's surgeon's December 2018 indication that Roger had no restrictions because "the claimant would still be expected to have at least some degree of limitation since his surgery, rather than no restrictions at all." *Id*. Finally, the ALJ found "persuasive" Dr. Carla Llavona-Ramia's June 6, 2019 assessment for Roger's VA disability claim that Roger's back problems would probably prevent him from heavy lifting and carrying objects typically of physical labor, but would not limit his ability to work in a sedentary or light job with restrictions of lifting or carrying heavy objects.

### IV

Roger argues the ALJ's finding that he is capable of doing light work is affected by error and is not supported by substantial evidence. Specifically, Roger contends: 1) the ALJ erred in failing to consider the combined effects of all of his impairments; and 2) substantial evidence does not support the ALJ's finding that Roger's allegations of pain and limitations are inconsistent with the record as a whole.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986).

Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) currently performs or, during the relevant time period, did perform any substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

  4)  is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

  5)  is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at steps 3 or 5 leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

  The plaintiff has the burdens of production and persuasion on steps 1 through 4. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

  In the instant case, Roger claims error on the ALJ's part at Step Four.

A

  Roger argues that there exists a line of evidence not addressed by the ALJ anywhere in his Decision and not accounted for in evidence the ALJ relied upon. He says the evidence arises from numerous examination findings during physical therapy of "significant tightness in the left piriformis insertion/ITB region" and the opinion of an acceptable medical source upon reviewing those examination findings that Roger suffers from piriformis syndrome[3] as well as a compressed right nerve root at L5/S1. The Commissioner counters that the ALJ considered all the evidence Roger cites in his brief, Roger concedes treating doctors did not diagnose piriformis syndrome, Roger admits the VA doctor made no finding of

---

[3] "A condition marked by pain in the hip and buttock that radiates up into the lower back and down the leg . . . This is caused by entrapment of the sciatic nerve as it passes through the piriformis muscle in the buttock. Because the symptoms mimic those caused by a herniated lumbar disk, the syndrome may be confused with that disease. Treatment includes physical therapy to relieve pressure, ultrasound to reduce muscle spasm, and anti-inflammatory medicines. Surgical therapy to free the entrapped nerve may be necessary." Taber's Online, https://www.tabers.com/tabersonline/view/Tabers-Dictionary/730361/0/piriformis_syndrome?q=piriformis+syndrome (last visited Jan. 3, 2022).

piriformis syndrome, and a second treating nurse anesthetist made no mention of piriformis syndrome.

Roger bases his argument on a single note on a single page of the record. On June 12, 2019, Nurse Anesthetist Mackenzie L. Kelley wrote: "We reviewed the PT notes today. It appears they said he has a tight IT band and piriformis syndrome." AR 841. There are several problems with Roger's argument that the ALJ's failure to consider his piriformis syndrome rendered the ALJ's Decision unsupported by substantial evidence. First, while Nurse Anesthetist Kelley was an acceptable medical source[4], she did not actually diagnose piriformis syndrome; Nurse Kelley noted "*they* [the physical therapist] *said*" Roger had piriformis syndrome. *Id*. Roger does not point to anywhere else where Nurse Kelley discussed or even mentioned piriformis syndrome.

Second, the ALJ was not required to discuss every piece of evidence, and so his failure to mention one passing reference to piriformis syndrome could not alone doom his Decision. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). Roger concedes as much, but in the next breath argues the ALJ did not minimally articulate his analysis of the evidence, as he was required to do, when he failed to consider evidence of a piriformis syndrome. Roger's reasoning is untenable in light of the ALJ's discussion of the record evidence. While the ALJ did not observe Nurse Anesthetist Kelley's notation of piriformis syndrome, the ALJ explicitly considered the very Progress Notes in which Nurse Kelley wrote piriformis syndrome. The ALJ observed that Roger continued to report pain going into his hip, buttocks, and down the left leg at that time. Significantly, the ALJ considered examination notes that revealed left hip and thigh tenderness at times, limited

---

[4] "Acceptable medical source means a medical source who is a: . . . Licensed Advanced Practice Registered Nurse, or other licensed advanced practice nurse with another title, for impairments within his or her licensed scope of practice[.]" 20 C.F.R. § 404.1502(a)(7).

range of motion in his left hip and thigh at times, limited range of motion in his low back at times, reduced sensation on the left side at times, and a limp and antalgic gait at times. The ALJ not only expressly considered what examination of Roger's hip region and lower back revealed, he also expressly considered Roger's ongoing complaints to medical sources of low back and left hip pain and that the pain limited what he could do. It was those examination findings and continued pain complaints which prompted his physical therapy which, in turn, prompted an assessment of "significant tightness in the Lt piriformis insertion/ITB region."[5] In other words, the ALJ considered the evidence that was one and the same evidence of piriformis syndrome.

Lastly, Roger points to nowhere else in the record where medical sources diagnosed or even mentioned piriformis syndrome. Specifically, Dr. Naomi Chelli and Dr. Michael Berry who treated his low back and hip problems did not make that diagnosis. The VA Dr. Llavona-Ramia did not make that diagnosis. Those doctors considered Roger's reported pain and discomfort in his left leg, hip, and back. Dr. Chelli, for instance, explained to Roger in April 2018 after noting he had a negative hip MRI that his pain was coming from his back and not the hips as he insisted. Dr. Suleman Hussain in June 2018, after reviewing Roger's x-rays of the left hip and spine and a MRI of his left femur, stated he did not feel Roger's symptoms were coming from his hip or thigh. Roger's surgeon Dr. Berry noted, after ordering and considering an MRI of Roger's lumbar spine following surgery, he had a frank discussion with Roger that he could not explain why Roger was experiencing the amount of discomfort that he was in. The ALJ considered all of this in his Decision such that his finding that Roger retained the ability to do light work was supported by substantial evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148,

---

[5] AR 815, 821, 822, 824, 827, 829.

1154 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). The Court is loathe to conclude that the ALJ reversibly erred in failing to consider one statement of piriformis syndrome in a record replete with doctors' statements (typically based upon imaging results, no less) as to the source of Roger's symptoms and resulting physical limitations.

The foregoing analysis likewise compels the court to reject Roger's argument that the ALJ failed to sufficiently address evidence of his compressed right nerve root. Nurse Kelley's full statement in that regard was not definitive in any event: "Previously we had discussed with him that the right transversing nerve root at l5s1 *seems* to look a *little* compressed and *could* be a *potential* source of his pain pattern." AR 841 (emphasis added).

### B

Next, Roger argues that his testimony about his pain and the limitations he suffers is not inconsistent with the medical record or the record of his activities. Roger highlights the extent of his treatment for his complaints, the continuing evidence of nerve root compression and muscle tightness, the ALJ's failure to identify any activity that indicated Roger was exaggerating his pain or that he was capable of doing light work, and the ALJ's failure to explore why Roger would exaggerate his symptoms to give up tens of thousands of dollars every year. The Commissioner argues the ALJ weighed Roger's reports of disabling symptoms against the treatment notes, objective test results, and evidence from his medical providers consistent with the regulations. The Commissioner further argues the ALJ properly considered Roger's daily activities, and the ALJ did not err by failing to find Roger's work history corroborated his reports of disabling symptoms.

SSR 16-3p provides that all the evidence, including objective medical evidence, is to be considered in evaluating the intensity, persistence, and limiting

11

effects of an individual's symptoms and also the factors set forth in 20 C.F.R. § 404.1529(c)(3) are to be considered including: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. SSR 16-3p, at *7-8.

Roger essentially invites the Court to reweigh the evidence in order to find his allegations of the extent of his pain and limitations were fully consistent with the record evidence. The Court can neither reweigh the evidence nor overturn the ALJ's subjective symptom evaluation unless it is "patently wrong." *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004) (explaining that in reviewing an ALJ's decision, the court cannot reweigh evidence, resolve conflicts in the record, decide questions of credibility, or otherwise substitute its own judgment for that of the Commissioner); *and Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014) (explaining "patently wrong" means "the decision lacks any explanation or support"). Here, the ALJ stated up front that Roger's statements about the intensity, persistence, and limiting effects of his symptoms were inconsistent and that the objective medical record did not support his allegations of disability. The ALJ proceeded to detail there were "some discrepancies about how [Roger] described the effectiveness of injections," and the ALJ detailed Roger made some inconsistent statements about the exact day he injured himself when slipping on ice. The ALJ considered that while Roger received treatment in the form of massage therapy, physical therapy, a lower back microdiscectomy, oral medication, and epidural steroid injection, his pain complaints continued. However, the ALJ also considered that doctors commented Roger's pain was not coming from his hip as he insisted, that results upon examination sometimes

revealed positive findings and other times revealed normal findings, that imaging and testing results similarly included positive findings (e.g. multilevel degenerative disc disease) but also mild or essentially normal findings, and that Roger's surgeon stated Roger's pain response was highly exaggerated. Because the ALJ *accurately* detailed medical sources' statements and opinions, imaging results, Roger's presentation on examination, and the full array of treatment Roger received, the Court cannot say the ALJ's finding of inconsistency between Roger's allegations of his symptoms and the evidence was patently wrong.

Nor did the ALJ say anything in his Decision as to Roger's daily activities to indicate he placed too much emphasis on them or otherwise improperly considered them. The ALJ provided a glimpse into his reasoning in this regard when he found Dr. Llavona-Ramia's VA disability opinion that Roger's back problems would not limit his ability to work in a sedentary or light job with restrictions of lifting or carrying heavy objects persuasive. *See Zurawski*, 245 F.3d at 889 ("While we have never required an ALJ to address every piece of evidence or testimony in the record, the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits"). The ALJ observed that Dr. Llavona-Ramia's opinion was "based on a detailed assessment of the claimant's functioning and was generally consistent with those findings."[6] 33. The ALJ could have done a better job of connecting the dots between Roger's daily activities and his ultimate conclusion as to Roger's subjective statements as to his symptoms, but he nevertheless enabled the Court to trace the path of his reasoning and to assure itself that he considered the important evidence. *See Scott*, 297 F.3d at 595 (noting the Seventh Circuit's repeated admonishment that ALJs must "sufficiently

---

[6] Dr. Llavona-Ramia noted Roger was "independent in all activities of daily living: he was able to drives [sic] his own car." AR 839-40.

13

articulate their assessment of the evidence to assure us that they considered the important evidence and to enable us to trace the path of their reasoning").

Ultimately, the ALJ's subjective symptom evaluation was supported by substantial evidence and the Decision as a whole is free of reversible error. The ALJ's failure to specifically discuss Roger's work history does not warrant a different conclusion. The ALJ was not statutorily required to consider Roger's work history, and, "[a]lthough a consistent work history weighs in favor of a positive credibility finding, it is still just one factor among many, and it is not dispositive." *Stark v. Colvin*, 813 F.3d 684, 689 (7th Cir. 2016); *Summers v. Berryhill*, 864 F.3d 523, 529 (7th Cir. 2017).

## V

For the foregoing reasons, the Plaintiff's Motion for Summary Judgment (Doc. 15) is DENIED and the Defendant's Motion for Summary Affirmance (Doc. 19) is GRANTED. The Clerk of Court is directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Roger C., is AFFIRMED." This matter is now terminated.

*It is so ordered.*

Entered on January 4, 2022.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE